IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GRACO CHILDREN'S PRODUCTS, INC., )
                                 )    Civil Action
            Plaintiff            )    No. 07-CV-00978
                                 )
      vs.                        )
                                 )
CHICCO USA, INC.,                )
                                 )
            Defendant            )


                      *    *    *

APPEARANCES:

        LYNN E. RZONCA, ESQUIRE
        MELISSA E. SCOTT, ESQUIRE
            On behalf of Plaintiff

        ANTHONY S. VOLPE, ESQUIRE
        JOHN J. O'MALLEY, ESQUIRE
        RYAN W. O'CONNELL, ESQUIRE
            On behalf of Defendant


                      *    *    *

                M E M O R A N D U M

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on the parties' request

for construction of disputed phrases used in United States Patent

No. 6,478,327 ("the '327 patent") issued November 12, 2002 by the

United States Patent and Trademark Office ("Patent Office").  The

parties submitted claim construction briefs seeking to have the

court construe various claim terms of the '327 patent pursuant to

Markman v. Westview Instruments, 517 U.S. 370, 116 S.Ct. 1384,

134 L.Ed.2d 577 (1996) ("Markman II").  For the reasons which

follow, the disputed terms are construed as set forth in the
accompanying Order and below.

### PROCEDURAL HISTORY

Plaintiff Graco Children's Product, Inc. initiated this
civil action on March 12, 2007 by filing a one-count Complaint
against defendant Chicco USA, Inc.  Plaintiff avers that
defendant is infringing upon its '327 patent, a patent for a
foldable children's stroller which is owned by Graco.
Specifically, the Complaint alleges that defendant makes, uses,
sells, offers for sale and/or imports strollers, including the
Cortina Stroller and the Cortina Travel System, which infringe
claims 20, 21 and 26 of the '327 patent.

Defendant filed its Answer on June 6, 2007, denying all
claims of infringement and asserting three counterclaims.  The
counterclaims allege unfair competition, seek declaratory
judgment of non-infringement, and seek declaratory judgment that
the '327 patent is invalid.  On June 22, 2007, plaintiff filed
its Answer denying the three counterclaims.

On September 12, 2007, defendant filed a request with
the Patent Office seeking reexamination of the '327 patent.  On
November 29, 2007, the Patent Office granted defendant's request
for reexamination of the patent, but only with respect to claims
1-19, which are not at issue in this litigation.  By Order dated

December 12, 2007, I denied a defense motion for a stay of this litigation until completion of the Patent Office reexamination.

Presently before the court are the parties' <u>Markman</u> briefs filed September 17, 2007 with accompanying exhibits, and response briefs filed October 1, 2007 with accompanying exhibits. I held a <u>Markman</u> hearing on January 28, 2008 and took the matter under advisement.[1]   Hence this Memorandum.

<u>JURISDICTION AND VENUE</u>

This action arises under the patent laws of the United States, 35 U.S.C. §§ 101-376.  Therefore, this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (original jurisdiction under patent laws).

Venue is proper because defendant, a New Jersey corporation, has its principal place of business in Lancaster, Pennsylvania, which is within this judicial district.  28 U.S.C. § 1391.

<u>DISCUSSION</u>

Analysis of patent infringement involves two steps. First, the court must properly construe the asserted claims. Second, based on proper claim construction, the court determines whether the accused product infringes the asserted claims.

---

[1]   Although the parties and I refer to the January 28, 2008 proceeding as a <u>Markman</u> "hearing," the parties presented no evidence. Instead, the parties offered oral argument on their briefs.

<u>Vitronics Corporation v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1581-1582 (Fed.Cir. 1996).  A <u>Markman</u> hearing addresses the first step of the analysis:  proper construction of the claims.

Claim construction is a question of law to be determined by the court.  <u>Markman II</u>, 517 U.S. at 372, 116 S.Ct. at 1387, 134 L.Ed.2d at 581.  Where, as here, the district court's jurisdiction is based in whole or part on 28 U.S.C. § 1338, the United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction.  28 U.S.C. § 1295(a)(1).  Accordingly, case law from the Federal Circuit is binding on this court.

In interpreting patent claims, the court should first look to the intrinsic evidence of record.  Intrinsic evidence includes the patent itself, including the claims, specification and, if in evidence, the prosecution history.  <u>Vitronics</u>, 90 F.3d at 1582.  When possible, a claim should be construed so as to sustain its validity.  <u>Whittaker Corporation by its Technibilt Division v. UNR Industries, Inc.</u>, 911 F.2d 709, 712 (Fed.Cir. 1990).

In determining the meaning of the disputed claim, the court begins with the words of a claim.  Words in a claim should be given the "ordinary and customary meaning" that such terms would have to a "person of ordinary skill in the art in question" at the time of the invention, that is, as of the effective filing

-4-

date of the patent application.   Phillips v. AWH Corporation,
415 F.3d 1303, 1312-1313 (Fed.Cir. 2005)(en banc).

In some cases, however, the ordinary meaning of claim
language as understood by a person of skill in the art "may be
readily apparent even to lay judges, and claim construction in
such cases involves little more than the application of the
widely accepted meaning of commonly understood words."  Phillips,
415 F.3d at 1314.

Patents are generally understood to be addressed to,
and intended to be read by, inventors skilled in the pertinent
art.  Thus, for purposes of claim construction, it is assumed
that the person of ordinary skill in the art has read the patent
in its entirety with an understanding of the claim terms' meaning
in the applicable field, and has knowledge of any special meaning
and usage in the field.  The inquiry into how a person of
ordinary skill in the art understands a claim term provides "an
objective baseline from which to begin claim interpretation."
Phillips, 415 F.3d at 1313.

The patent specification is usually considered the best
guide to the meaning of a disputed term.   This is because the
patent is statutorily required to include a description of the
invention in "full, clear, concise, and exact terms."   In
addition to revealing a special definition given to a claim term
by the patentee, the specification may contain an intentional

-5-

disclaimer of claim scope.  <u>Phillips</u>, 415 F.3d at 1315-1316
(<u>citing</u> 35 U.S.C. § 112).

Although terms are generally construed in accordance
with their ordinary meaning, the patentee may choose to "be his
own lexicographer" and use terms other than their ordinary
meaning, as long as the special definition of the term is clearly
stated in the patent specification or file history.  <u>Vitronics</u>,
90 F.3d at 1582.  Thus, in examining the patent's intrinsic
evidence, the court may consider the prosecution history of the
patent.  This history contains the complete record of all the
proceedings before the Patent Office, including any express
representations made by the applicant regarding the scope of the
claims.  <u>Vitronics</u>, 90 F.3d at 1582.

If the meaning of the patent is not apparent from the
intrinsic evidence, then the court may consider extrinsic
evidence.  <u>Vitronics</u>, 90 F.3d at 1583.  Extrinsic evidence
includes expert and inventor testimony, dictionaries, and learned
treatises, which the court may, in its discretion, use if
helpful.  <u>Phillips</u>, 415 F.3d at 1317-1319.  However, extrinsic
evidence may not be used to vary or contradict the claim
language, and it may not be used to contradict other parts of the
specification.  <u>Vitronics</u>, 90 F.3d at 1584.

Because the meaning of the disputed phrases in this case can be determined from the intrinsic evidence, I do not consider any extrinsic evidence.

### Claim Construction

In claim construction analysis, "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." Synthes (U.S.A.) v. Howmedica Osteonics Corporation, 2008 WL 783569, at *3 (E.D.Pa. March 24, 2008)(Brody, J.)(citing Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 803 (Fed.Cir. 1999).

The parties dispute the meaning of several phrases contained in Claims 20, 21, and 26 of the '327 patent.  I address the claims seriatum.

A. Construction of disputed terms in Claim 20

The parties dispute the meaning of three phrases in Claim 20.  Claim 20 reads, in its entirety, as follows:

> A foldable stroller comprising:
> a foldable stroller frame convertible between an operating position for use and a folded position,
> > the stroller frame having a rear left and right legs and left and right hinge locks fixedly mounted respectively to the rear left and right legs, and a handlebar frame pivotally connected to the left and right hinge locks;
> an upper tray mounted to the handlebar frame; and
> a one-hand actuator for unlocking the left and right hinge locks mounted to the upper tray.

-7-

1.   "left and right hinge locks fixedly mounted
          respectively to the rear left and right legs"

First, the parties dispute the meaning of the phrase "left and right hinge locks fixedly mounted respectively to the rear left and right legs."  Plaintiff proposes that the proper construction of this phrase is "any two conventional hinge locks capable of maintaining a locked position between the stroller's rear legs and the handlebar frame when locked, and allowing movement therebetween when unlocked.  The right and left hinge locks must be securely attached to the rear right and left legs, respectively."  Plaintiff's <u>Markman</u> brief, 9.

Defendant proposes that this phrase be construed as meaning that "the portion of the hinge lock surround[ing] the rear leg must be in a permanent orientation relative to that leg in contrast to any movement such as a rotating or pivoting relative to the leg."  Defendant's <u>Markman</u> brief, 13.

Essentially, the parties dispute whether each hinge lock must be "in a permanent orientation" relative to the respective rear leg (for example, not pivoting or rotating about the leg), which is defendant's construction; or must merely be "securely attached" the respective rear leg, but allowing movement between the legs and handlebar frame when unlocked, which is plaintiff's construction.

Plaintiff argues that the language of Claim 20 and the patent specification do not support defendant's suggestion that

-8-

each hinge lock must "surround" its respective rear leg. Further, plaintiff contends that because the patent does not require "surrounding", the rest of defendant's proposed construction must fail because it adds further restriction on the impermissible "surrounding" limitation.

Moreover, plaintiff avers that defendant's proposed requirement that the hinge lock be in a "permanent orientation" to the leg is vague, and conflicts with defendant's suggestion that "fixedly mounted" means that the entire hinge lock is "immovable."  Plaintiff argues that interpreting "fixedly mounted" as "immovable" would render the claims invalid because immovable hinge locks would not result in a functioning, foldable stroller.

Defendant points to other language within Claim 20, arguing that the patentee intended a distinction between components being "fixedly" mounted, as specified in this phrase, and components that are "pivotally", "movably" or "pivotally" mounted as the patent describes other components.[2]

---

[2]     Defendant also avers that "fixedly mounted" is not "slidably mounted".  Specifically, defendant states that "as properly construed, a 'fixed' mount of the hinge locks to the legs must mean that the portion of the hinge lock connected to the leg must be immovable relative to that leg in contrast to any movement <u>such as a sliding along the leg</u> or rotating or pivotal action relative to the leg."  Defendant's <u>Markman</u> brief at pages 9-10, n.1 (emphasis added).  However, at footnote 3, defendant concedes that the hinge lock must be able to be "moved along the leg...toward the wheel" in order to fold the stroller.  The claim clearly requires that the stroller be foldable.

(Footnote 2 continued):

As described in the patent specification, the hinge locks "pivotally mount the handlebar frame [20] to the rear legs [40] at pivots [P6].  The hinge locks [70] can be any conventional hinge lock for maintaining a fixed position between the rear legs [40] and the handlebar frame [20] when locked, and for allowing pivotal motion therebetween when unlocked."[3]  The specification goes on to give an example: "For instance, the left and right hinge locks [70L, 70R] each can be fixedly attached to and positioned between" the ends of the rear legs.[4]

Neither the claim nor the specification support the aspect of defendant's proposed construction requiring that each hinge lock must "surround" the respective rear leg.  It is improper to read into a claim a limitation that is not there. See, e.g., The Laitram Corporation v. NEC Corporation, 163 F.3d 1342, 1348 (Fed.Cir. 1998), which determined it was improper to read a limitation appearing in the specification into

--------

(Continuation of footnote 2):

Where possible, I must construe the claim so as to sustain its validity, see Whittaker Corporation, supra.  Accordingly, and because defendant apparently concedes that the hinge lock must be able to move along the leg in order to fold the stroller, I conclude that a "fixedly mounted" hinge lock may be "slidably mounted".

[3]     '327 patent, Col. 6, lines 13-19.

[4]     '327 patent, Col. 6, lines 19-22.  Alternatively, the specification indicates that the hinge locks can be configured as previously disclosed in U.S. Pat. No. 6,155,740 issued to Hartenstine ("Hartenstine patent") or U.S. Pat. No. 5,110,150 issued to Chen ("Chen patent"), the disclosures of which are incorporated by reference.  '327 patent, Col. 6, lines 34-39.

-10-

a claim itself.  Accordingly, I agree with plaintiff that the
hinge lock need not "surround" the respective rear leg.

Defendant's construction requires the hinge lock to be
in a "permanent orientation" with respect to the leg, as opposed
to "any movement such as a rotating or pivoting relative to the
leg" (emphasis added).  Nevertheless, as discussed above at
footnote 2, defendant concedes that each hinge lock may slide or
"move along" the respective rear leg in order to fold the
stroller.

Thus, defendant concedes that some movement along the
leg is permitted by the definition of "fixedly mounted."
Defendant includes examples of "any movement" that would preclude
the hinge lock's position in a "permanent location,"
specifically, "rotating" and "pivoting" relative to the leg.
However, defendant's proposed construction indicates that
"permanent orientation" precludes "all movement", not only
rotating and pivoting.

Because defendant concedes that the hinge lock may
slide or "move along" the leg, which would clearly fall within
"any movement", I conclude that defendant's proposed construction
of "fixedly mounted" as requiring a "permanent orientation"
without any movement whatsoever must fail.

With some modification, I adopt plaintiff's proposed
construction of "left and right hinge locks fixedly mounted

respectively to the rear left and right legs." Plaintiff's proposed construction requires in part that the hinge locks must be capable of "allowing movement" between the stroller's rear legs and the handlebar frame when locked. This construction is broader than that contemplated by the specification, which requires the hinge locks to allow for "pivotal motion" between the rear legs and handlebar frame when locked.

Accordingly, I construe "left and right hinge locks fixedly mounted respectively to the rear left and right legs" as meaning "any two conventional hinge locks capable of maintaining a locked position between the stroller's rear legs and the handlebar frame when locked, and allowing pivotal motion therebetween when unlocked. The right and left hinge locks must be securely attached to the rear right and left legs, respectively."

2. <u>"a handlebar frame pivotally connected to the left and right hinge locks"</u>

Second, the parties dispute the meaning of "a handlebar frame pivotally connected to the left and right hinge locks." Plaintiff construes this phrase as "a generally U-shaped handlebar frame comprised of a handlebar and right and left push arms extending from the handlebar. The ends of the right and left push arms are attached to the left and right hinge locks, respectively, so that the arms can move relative to the hinge locks."

Plaintiff bases this proposed construction on the ordinary meaning of the claim terms, and express statements in the patent specification.  Specifically, plaintiff's construction is drawn largely from the patent specification, which provides that "[t]he handlebar frame [20] comprises a handlebar [22] and right and left push arms [24R, 24L, collectively 24] extending from the handlebar [22].  The handlebar [22] and the push arms [24] form a generally U-shaped frame."[5]

Defendant also contends that this phrase must be construed in accordance with its plain and ordinary meaning.  However, defendant focuses on the phrase "pivotally connected", which it asserts describes the connection between the handlebar frame and the hinge locks.  Specifically, defendant argues that "pivotally connected" cannot mean "fixedly mounted", noting that the patentee chose "fixedly mounted" for some components (e.g., the hinge locks' connection to the rear legs) but selected "pivotally mounted" for these components.  Nevertheless, defendant does not offer a proposed construction of the phrase.

The parties appear to agree that the patent contemplates a connection between the handlebar frame and the hinge locks which allows for a pivoting movement between the components.  While defendant does not propose a specific construction of "pivotally connected", plaintiff's construction

---

[5]     '327 patent, Col. 4, lines 59-62.

suggests that "pivotally connected" means that the push arms of
the handlebar frame are attached to the hinge locks such that
"the arms can move relative to the hinge locks."  Defendant does
not refute this, nor does it propose its own alternative
construction of the phrase.

The patent specification indicates that the hinge locks
"pivotally mount" the handlebar frame to the rear legs of the
stroller.[6]  As discussed above, when unlocked, the hinge locks
must allow for pivotal movement between the handlebar frame and
the rear legs.[7]  Thus, it is clear that the patent contemplates a
pivoting movement, at the hinge lock, between the rear legs and
the handlebar.

Based on the intrinsic evidence contained within the
patent specification and Claim 20 itself, I find that the patent
language unambiguously supports plaintiff's proposed
construction.  Therefore, "a handlebar frame pivotally connected
to the left and right hinge locks" means "a generally U-shaped
handlebar frame comprised of a handlebar and right and left push
arms extending from the handlebar.  The ends of the right and
left push arms are attached to the left and right hinge locks,
respectively, so that the arms can move relative to the hinge
locks."

---

[6]     '327 patent, Col. 6, lines 13-14.

[7]     '327 patent, Col. 6, lines 15-19.

3.    <u>"a one-hand actuator for unlocking the left and right</u>
<u>hinge locks mounted to the upper tray"</u>

Third, the parties dispute the meaning of "a one-hand actuator for unlocking the left and right hinge locks mounted to the upper tray."  Plaintiff proposes that this phrase means "an actuator that can be pressed, pulled, or otherwise moved with one hand to unlock the hinge locks and that is attached to or received by any portion of the upper tray."  Moreover, plaintiff proposes that "upper tray" means "a substantially flat receptacle mounted between the left and right sides of the stroller handlebar frame".

Defendant argues that this disputed phrase should be construed as "a handle mounted for movement within a defined plane and operatively connected to the underside of the upper tray to release or activate linkage located in a slot on the underside of the tray."  Defendant submits that no special definition of "upper tray" is required.

Plaintiff relies on the ordinary meanings of the claim terms, together with the patent specification and prosecution history, in support of its construction of this phrase. Specifically, plaintiff avers that initially, the Patent Office rejected the claims that became Claims 20 and 26 based on U.S. Patent No. 5,938,229 (the "Chen patent"), which disclosed a "driving device" mounted to a supporting rod on the stroller handlebar.

Plaintiff states that in its initial rejection of the
'327 patent, the Patent Office argued that it would be obvious to
one of ordinary skill in the art to mount the actuator to an
upper tray rather than a handlebar, and that the modification was
merely a design choice.  Plaintiff avers that through argument,
Graco established that its invention (i.e., mounting the actuator
to an upper tray) was not obvious and therefore deserved patent
protection, without changing the language of Claims 20, 21 and
26.  (Plaintiff's <u>Markman</u> brief, 3-4.)

Moreover, plaintiff argues that defendant's proposed
construction is ambiguous and improperly reads a limitation from
Claim 26 into Claim 20.  Specifically, plaintiff makes four
arguments against defendant's proposed construction.  First,
plaintiff argues that defendant's construction improperly limits
the actuator to a "handle", and avers that there is no support
for such a limitation.  Second, plaintiff contends that
defendant's construction is ambiguous because it does not explain
what "mounted for movement within a defined plane" means.

Third, plaintiff argues that defendant improperly tries
to change the express language of the claim from "an
actuator...mounted <u>to</u> the upper tray" to an actuator...mounted
<u>within</u> the upper tray".  Finally, plaintiff contends that
defendant's construction should be rejected because it reads in a

limitation from Claim 26 requiring the actuator to be mounted to the underside of upper tray, which is not contained in Claim 20.

Contrary to plaintiff's argument, the patent specification does support defendant's construction of the actuator as a "handle mounted for movement...." Specifically, the specification indicates that "[t]he remote hinge-lock actuator [110] comprises a handle [112] and left and right linkage assemblies [130L, 130R (collectively 130)]. The handle is mounted for a movement between an actuated or pushed position...."[8] Thus, I conclude that defendant's construction of an actuator as a "handle mounted for movement" is supported by the specification.

However, "within a defined plane" is ambiguous because it does not clarify whether the actuator moves within a defined plane, or the actuator is mounted within a defined plane. Moreover, defendant cites nothing in support of this portion of its proposed construction. Additionally, neither the patent claim nor the specification indicate that the actuator must be mounted "within" the upper tray as defendant submits, but rather it simply must be mounted to the upper tray.[9]

With regard to defendant's proposed construction that the actuator must be mounted to the underside of the upper tray,

---

[8]     '327 patent, Col. 7, lines 23-26.

[9]     See '327 patent, Col. 12, line 25 (Claim 20).

-17-

I note that although Claim 26 contains this requirement, Claim 20 does not.  When a patent claim does not contain a certain limitation and another claim does, "that limitation cannot be read into the former claim in determining either validity or infringement."  <u>Amgen v. Hoechst Marion Roussel, Inc.</u>, 314 F.3d 1313, 1325 (Fed.Cir. 2003)(<u>quoting</u> <u>SRI International v. Matsushita Electric Corporation of America</u>, 775 F.2d 1107, 1122 (Fed.Cir. 1985)).  Therefore, the limitation that the actuator be mounted to the underside of the tray (as required by Claim 26) cannot be read into Claim 20, which does not expressly include this requirement.

Finally, I address plaintiff's proposed construction of "upper tray".  Defendant submits that the phrase "upper tray" requires no special construction and should be construed in accordance with the plain and ordinary meaning of the phrase.  I agree with defendant that "upper tray" requires no specialized construction, and that it can be construed in accordance with its plain and ordinary meaning.

A court need not construe every single disputed claim.  <u>See</u> <u>Synthes (USA) v. Smith & Nephew, Inc.</u>, __ F.Supp.2d __, 2008 WL 343114, at *18 (E.D.Pa. February 4, 2008)(Joyner, J.)(<u>citing</u> <u>United States Surgical Corporation v. Ethicon, Inc.</u>, 103 F.3d 1554, 1568 (Fed.Cir. 1997)).  Plaintiff has not explained why its proposed construction of "upper tray" is necessary and would be

more helpful to a juror than the plain language of the term
itself.  See Synthes, 2008 WL 343114, at *18.

Moreover, I conclude that Graco's construction that the
upper tray is a "substantially flat receptacle mounted between
the left and right sides of the stroller handlebar frame" is
inappropriate because the patent specification describes the
upper tray as comprising "at least one recessed compartment, such
as a cup or container holding recess", which is not clearly
"substantially flat".[10]

Additionally, the extent to which the upper tray must
be "substantially" flat in order to comport with plaintiff's
construction is ambiguous.  Because plaintiff's proposed
definition of "upper tray" is ambiguous and unhelpful, I decline
to construe "upper tray".

Accordingly, "a one-hand actuator for unlocking the
left and right hinge locks mounted to the upper tray" means "a
handle mounted to the upper tray for movement by one hand to
unlock the left and right hinge locks".

B. Construction of disputed terms in Claim 21

The parties dispute the meaning of one phrase in
Claim 21.  Claim 21 reads, in its entirety, as follows:

A stroller according to claim 20, wherein the
handlebar frame comprises a left and right push

---

[10]    '327 patent, Col. 7, lines 3-5.

-19-

> arms and a handlebar pivotally to the left and
> right hinge locks mounted to the upper tray.

In Claim 21, the parties dispute the meaning of "the
upper tray being connected to the left and right pivot
assemblies".  Plaintiff proposes that "left and right pivot
assemblies" should be construed to mean "any grouping of
components that connect the handlebar to the push arms to allow
for any degree of rotation between them" and "the upper tray
being connected to the left and right pivot assemblies" should be
construed as "the upper tray is attached to any of those
components forming the pivot assemblies or to any combination of
those components."[11]

Defendant does not propose an alternative construction
and submits that the phrase should be construed in accordance
with its plain and ordinary meaning.  However, defendant avers
that plaintiff's construction should be rejected because the only
"grouping of components" identified in the '327 patent are pivots
[P7], fixed pivot members [202] and movable pivot members [204],
none of which permit "any degree of rotation", as set forth by
plaintiff, but rather permit a limited degree of rotation of the
handlebar about the push arms.  For the reasons which follow, I

---

[11]     Additionally, plaintiff argues that the meaning of "upper tray"
should be construed in accordance with Claim 20.  As discussed above, "upper
tray" does not require special construction and should be construed in
accordance with its plain and ordinary meaning.

agree with defendant that no special construction of the phrase is necessary.

As defendant concedes, the patent specification broadly allows that "any known angle adjuster can be used" for pivotally positioning the handlebar relative to the push arms.[12]  Nevertheless, the patent claims and specification do not support plaintiff's proposal that the pivot assemblies must permit <u>any</u> degree of rotation between the push arms and the handlebar frame.

With regard to the degree of rotation, the specification notes only that "[i]n the present embodiment, the angle adjuster [200] is adapted to provide a greater rotation capability so that the handlebar can be flipped over close to the push arms [24], as shown in phantom in FIG. 3."[13]  However, it does not specify the degree to which the rotation capability is "greater", nor does it indicate with what rotation capability the angle adjuster is being compared.  Therefore, I conclude that the specification does not support plaintiff's suggestion that any degree of rotation is required.

Moreover, I conclude that plaintiff's proposal that the pivot assemblies should be construed as "any grouping of components" which connect the handlebar and push arms, permitting rotation between them, is overbroad and unhelpful, given the

---

[12]   '327 patent, Col. 5, lines 1-4.

[13]   '327 patent, Col. 5, lines 8-12.

specification's provision for use of "any known angle adjuster[s]" as the "pivot assemblies". Therefore, I conclude that neither party has set forth a proposed construction of the disputed phrase which is helpful to this analysis, and I agree with defendant that this phrase does not require a special construction.

Accordingly, "the upper tray being connected to the left and right pivot assemblies" as set forth in Claim 21 shall be construed in accordance with its plain and ordinary meaning.

C. Construction of disputed terms in Claim 26

The parties dispute the meaning of five phrases in Claim 26, two of which are identical to phrases that appear in Claim 20 and which have been construed in section (A) above. Claim 26 reads, in its entirety, as follows:

> A foldable stroller comprising:
> a foldable stroller frame convertible between an operating position for use and a folded position, the stroller frame having a rear left and right legs and left and right hinge locks fixedly mounted to the rear left and right legs, and a handlebar frame pivotally connected to the left and right hinge locks;
> an upper tray mounted to the handlebar frame, the upper tray having at least one container holding compartment and an opening for inserting operator's fingers; and
> a one-hand actuator, mounted to an underside of the upper tray, for unlocking the left and right hinge locks, the actuator being mounted for a movement between an actuated position and an un-actuated position.

-22-

1.   <u>"left and right hinge locks fixedly mounted</u>
     <u>respectively to the rear left and right legs"</u>

Both parties agree that the terms "left and right hinge

locks fixedly mounted respectively to the rear left and right

legs" as recited in Claim 26 should have the same meaning as set

forth in Claim 20, and that a separate construction is not

required.  Therefore, as discussed above, "left and right hinge

locks fixedly mounted respectively to the rear left and right

legs" for purposes of Claim 26 means "any two conventional hinge

locks capable of maintaining a locked position between the

stroller's rear legs and the handlebar frame when locked, and

allowing pivotal motion therebetween when unlocked.  The right

and left hinge locks must be securely attached to the rear right

and left legs, respectively."

2.   <u>"a handlebar frame pivotally connected to the left and</u>
     <u>right hinge locks"</u>

Similarly, both parties agree that the terms "a

handlebar frame pivotally connected to the left and right hinge

locks" as recited in Claim 26 should be construed in accordance

with the phrase as set forth in Claim 20.  Therefore, as

discussed above, "a handlebar frame pivotally connected to the

left and right hinge locks" for purposes of Claim 26 means "a

generally U-shaped handlebar frame comprised of a handlebar and

right and left push arms extending from the handlebar.  The ends

of the right and left push arms are attached to the left and

-23-

right hinge locks, respectively, so that the arms can move
relative to the hinge locks."

    3.   <u>"the upper tray having at least one container holding
compartment and an opening for inserting operator's
fingers"</u>

Third, the parties dispute the meaning of the phrase
"the upper tray having at least one container holding compartment
and an opening for inserting operator's fingers".  Plaintiff
proposes that this phrase be construed as meaning "the upper tray
has at least one area for holding a container and an opening
through which the user may insert his or her fingers."
Defendant's proposed construction is "an upper tray having a
defined opening that permits the insertion of an operator's
fingers for pushing or pulling the handle in a defined plane."

The patent specification indicates that the upper tray
"comprises at least one recessed compartment, such as a cup or
container holding recess [122]" and notes that the illustration
of the upper tray provided in the patent "shows two cup or
container holding compartments [122] and a through-hole [124],
which permits the operator's hand or fingers to be inserted
therethrough."[14]

However, neither the terms of Claim 26 nor the
specification support defendant's proposed limitation that the
opening through which the user may insert his or her fingers must
be a particular size or shape, as suggested by defendant's

_____

    [14]    '327 patent, Col. 7, lines 3-8.

proposal of a "defined" opening.  Nor do the claim language or
specification support defendant's suggestion that the purpose of
the opening is specifically "for pushing or pulling the handle in
a defined plane".  The patent language indicates only that there
must be an opening through which the user can insert his or her
fingers.

The plain language of Claim 26 and the patent
specification unambiguously support plaintiff's proposed
construction of the disputed phrase.  However, as discussed
previously, I decline to construe "upper tray" in any specialized
way.  Accordingly, "the upper tray having at least one container
holding compartment and an opening for inserting operator's
fingers" means that "the upper tray has at least one area for
holding a container and an opening through which the user may
insert his or her fingers."

4.   "a one-hand actuator, mounted to an underside of the
     upper tray"

Fourth, the parties dispute the meaning of "a one-hand
actuator, mounted to an underside of the upper tray".  Plaintiff
contends that the terms "upper tray" and "one-hand actuator"
should be construed in accordance with Claim 20, and that
"mounted to an underside of the upper tray" means "any part of
the actuator is attached to any part of the lower surface of the
upper tray."  Defendant's proposed construction of this phrase is
"a handle mounted for movement within a defined plane and

operatively connected to the underside of the upper tray to release or activate linkage located in a slot on the underside of the tray."

In section A.3., _supra_, I determined that "a one-hand actuator for unlocking the left and right hinge locks mounted to the upper tray" as set forth in Claim 20 means "a handle mounted to the upper tray for movement by one hand to unlock the left and right hinge locks".  In doing so, I rejected the aspect of defendant's proposed construction that required the handle to be "mounted for movement within a defined plane" because of its ambiguity.  Defendant's proposed "movement within a defined plane" for purposes of Claim 26 is similarly ambiguous.

Moreover, the language of Claim 26 and the specification does not require any particular "linkage", nor does it require a "slot".  Therefore, I conclude that defendant's proposed construction improperly includes limitations which are not supported by the patent itself.  In addition, I note that defendant's proposed construction is ambiguous because it is unclear whether it intends the handle or the linkage to be located in the proposed "slot" on the underside of the upper tray.

In accordance with the construction of Claim 20 set forth above, I conclude that "a one-hand actuator, mounted to an underside of the upper tray" as set forth in Claim 26 means "a

-26-

handle for movement by one hand, which handle is mounted to the
lower surface of the upper tray".

     5.    "the actuator being mounted for movement between and
            actuated position and an un-actuated position"

     Finally, the parties dispute the meaning of "the
actuator being mounted for movement between an actuated position
and an un-actuated position".  Plaintiff construes this as "the
one-hand actuator is attached to the underside of the upper tray,
such that the actuator can be moved between a position which
releases the hinge locks and a position which allows the hinge
locks to remain locked."

     Defendant contends that this phrase means "a handle
mounted for movement within a defined plane and operatively
connected to the underside of the upper tray to release or
activate linkage located in a slot on the underside of the tray."
Thus, defendant's proposed construction is identical to its
proposed construction of the phrase discussed in section C.4.,
above, "a one-hand actuator, mounted to an underside of the upper
tray".

     The patent specification provides that the handle
component of the actuator "is mounted for a movement between an
actuated or pushed position, which pulls up the actuating members
[100] to release the hinge locks [70], and a non-actuated or
locked position, where the actuating members [100] are at their

-27-

normal, down position (hinge locks [70] remain locked)."[15] Additionally, the specification indicates that "[t]o actuate or release the hinge locks [70], the operator presses or pulls up the handle [112] with his or her fingers."[16]

As discussed previously, the patent language does not support defendant's proposed language requiring a particular "linkage" or a "slot". Additionally, defendant's proposed construction of this disputed phrase is not entirely helpful because it does not address the claim's requirement that the actuator move "between an actuated position and an un-actuated position". However, the parties agree that this phrase of Claim 26 requires the actuator to be mounted to the underside of the tray.

Accordingly, "the actuator being mounted for movement between an actuated position and an un-actuated position" means "a handle mounted for movement between a position which releases the hinge locks and a position which allows the hinge locks to remain locked".

<u>CONCLUSION</u>

For all the foregoing reasons I construe the disputed patent terms as indicated above.

---

[15]     '327 patent, Col. 7, lines 25-30.

[16]     '327 patent, Col. 7, lines 34-36.

-28-